ALLEN, J.,
delivered the opinion of the court.
James Stone andSerlie his wife presented a petition to a judge of the Circuit court, alleging that a female infant child, the daughter of the female petitioner by *a former husband, was illegally retained in the possession and custody of the appellant, John J. P. Armstrong, the paternal grandfather of the child, and prayed that a writ of habeas corpus ad subjiciendum might be awarded them. The petition was verified by affidavit, and the judge, by his order referring to the petition, awarded to the infant the writ, which issued in the usual form, and was made returnable before the Circuit court of Jackson county at a special term. On the return day the cause was docketed and continued, and on a subsequent day the appellant appeared and moved to quash the writ, the order awarding it, and the petition of the relators. This motion the court overruled, being of opinion that it was not competent to make such motion until a return was made to the writ, and that after the return it would be competent to make any defence of which he might avail himself on a motion to quash. The appellant thereupon made a return and produced the infant; and the evidence on both sides being heard, the court directed the child to be restored to the custody of its mother, the female petitioner. From this decision the defendant below has appealed.
The first error assigned is the refusal of the court below to quash the proceedings, because it is alleged the petition should have been made by the infant by her next friend.
This objection is based upon the provisions of the Code, p. 613, which it is argued varies from the act contained in 1 Rev. Code 468, § 1, which enacted that whenever *53 any person detained in custody, whether charged with a criminal offence or not, shall, by himself or by some other person in his behalf, apply, &c., and show by affidavit or other evidence, probable cause to believe that he is detained in custody without lawful authority, &c. The Code provides that the writ shall be granted to any person who shall apply for the same *by petition, showing by affidavit or other evidence, probable cause to believe he is detained without lawful authority; omitting the words by himself or some other person in his behalf, found in the act of 1819.
We think there is no substantial difference between the two enactments. Both acts depart, in many particulars, from the act of 31 Charles 2, which was limited to cases of detainer for criminal or supposed criminal matter, all other cases of unjust imprisonment being left to the habeas corpus at common law; whereas our act extends to all cases where a person is detained without lawful authority. 2 Tuck. Com., book 2, chap. 68. In all such cases, therefore, the provisions of the statute come in place of the common law; and as it was the leading intent of all the statutory provisions on this subject to extend and simplify this great and efficacious remedy for all illegal confinement, the words of the statute should be liberally construed so as to carry' out that intent. Whether the application or petition be preferred by the party himself, or in his name or by another in his behalf, probable cause to believe he is detained by unlawful authority must be shown by' affidavit or other evidence. When this is shown the writ is awarded to him, and the application would be treated as made by him unless disavowed. Where the person alleged to be detained illegally labors under disabilities, it would seem to be more appropriate to issue the writ on the petition of the person asserting the claim to the custody, than upon the petition of the person detained by his next friend. In either mode there is a person liable for the costs, and from whom the bond provided for in the 3d section may be required. The party contesting the claim sustains no injury, is deprived of no benefit, whether the one mode or the other be adopted, and should not be permitted to defeat the writ by mere personal objections. *It is objected that the petition is in the name of the husband and wife, and that although the mother might be entitled to the custody of the child, the right is personal, and does not devolve on the second husband; and therefore he improperly joined in the petition. It may be conceded that there is no devolution of authority to the husband; but until it is also shown that a second marriage forfeits the right of the mother, there is nothing in the objection ; for she could not institute any proceeding to assert the right unless her husband united. The enactment in the Code 533, $ 7th, does not apply to this case. There may be a guardian during the lifetime of the father or mother, or both of them. That section, as a general rule, gives the custody of the ward and the care and management of his estate to the guardian, but provides that the father, if living, and if dead, the mother, while she remains unmarried, shall, if fit for the trust, have the custody of the person of the minor and care of his education. This is not a controversy between the mother and a regularly appointed guardian for the custody of the minor, in which case only would the statute apply.
It is further argued that it is not the function of a writ of habeas corpus to try rights of property or settle questions of guardianship, but simply to release from improper confinement; and if it appear there is no improper restraint upon the minor, the court should not interfere.
It is true that a contest for the guardianship could not properly' be determined upon a writ of habeas corpus. The law has prescribed another form for settling such controversies. In England the chancellor, representing the king as parens patria;, has jurisdiction to determine controversies concerning the guardianship of a minor, and may control the right of a father to the custody of his child. De Manneville v. De Manneville, 10 Ves. R. 52. But the courts of law and the *judges thereof possess no such authority. Ex parte Skinner, 17 Eng. C. L. R. 122. In that case Ch. J. Best said, that no authority had been cited to show that the court had jurisdiction to take a child out of the custody of the father and deliver it over to the mother. Being in the legal custody of the father, if he abused his parental authority, the chancellor might interfere. The same proposition is advanced in The People v. Chegary, 18 Wend. R. 637. In the case of De Lacy v. Antoine, 7 Leigh 438, this court declared, that if, on the return, there was probable cause to believe that the petitioner was detained as a slave, the right to freedom should not be determined on a habeas corpus.
Whilst, therefore, it'is undoubtedly true that the proper office of the writ is to release from illegal restraint, and where the party is of years of discretion and sui juris, nothing more is done than to discharge him; yet, if he be not of an age to determine for himself, the court or judge must decide for him, and make an order for his being placed in the proper custody. And to enable it to do so, must determine to whom the right to the custody belongs. The custody of the minor will be assigned to the person having the right, unless it appeared he was an improper person to take it. There being no legal guardian whose rights are involved in the present controversy, and the father being dead, the mother, by reason of nurture, is entitled to the custody as of right, 4 Comyn’s Dig. title Guardian, D; Ratcliff’s Case, 3 Cope 37. Mellish v. De Costa, 2 Atk. R. 14. And as she seeks by this writ to have the child placed in her custody, the case is one *54 in which the court can use its discretion whether, under all the circumstances, it is best for the infant to assign it to the custody of the mother. The jurisdiction of the court or judge to determine who has the right to the custody of the minor upon'a habeas corpus, *has been uniformly affirmed. King v. Delaval, 3 Burr. R. 1434; King v. Greenhill, 31 Eng. C. L. R. 153. Where the person entitled has the custody and abuses it, the power of the court is limited, and the remedy for the abusé must be administered in another form. But where he has- not the custody, and is seeking to be restored to it, the court will exercise its discretion according to the facts, consulting the wishes of the minor, if of years of discretion; if not, exercising its own judgment as to what will be best calculated to promote the interests of the child, having due regard to the legal rights of the party claiming the custody.
In the present case, the mother was entitled to the custody as her legal right: the right was not lost by her intermarriage, there being no legal guardian to the child; and the facts and circumstances disclose nothing which should induce the court, in the exercise of a sound discretion, to deprive her of the custody. The defendant and wife áre proved to be persons of exemplary character, warmly attached to their grandchild, 'who has been treated by them with great kindness and affection. But they aré in the decline of life, in doubtful circumstances as to solvency, and somewhat dependent on their own children for a home. The mother and her second husband are shown to be persons of excellent moral character. They have been married two years and have no children; and the husband is an industrious young' man, whose father is In good circumstances. The mother, after the death of her first husband, who left no estate, supported herself by teaching school and her own labor; and during ' that' period the child was left in the care of the defendant. The Child is in her seventh year, too young to judge for herself upon such a state of facts. The judge, in the exercise of a sound discretion, could not hesitate in saying, in the language of the chancellor in Mellish v. De Costa, 2 Atk. R. 14, that the child had a ^natural right to the care and nurture of her mother. The conduct of the mother in permitting the child to remain with the defendant whilst she herself was laboring for her own support, does not impair her right to the custody. Owing to the chahge in her condition, the interest of the child will probably be promoted by the custody being restored to her;
Judgment affirmed.
PARENT AND CHILD.
I. Parent and Child.
A. Rights of Parent.
B. Personal Services.
C. Transactions between Parent and Child.
II. Bastardy.
A. Definition.
B. Presumption of Legitimacy.
C. Construction of Statute of Legitimacy.
D. Capacity of Bastards to Inherit.
E. Bastardy Proceedings against Putative Father.
Cross References.
Infants, appended to Caperton v. Gregory, 11 Gratt. 505.
Seduction.
I. PARENT AND CHILD.
A. RIGHTS OF PARENT.
Right of Parent to Custody of Child. — See mono-graphic notes on “Guardian and Ward” appended to Barnum v. Frost, 17 Gratt. 398; and “Divorce” appended to Bailey v. Bailey, 21 Gratt. 43. See also, Stringfellow v. Somerville, 95 Va. 701, 29 S. E. Rep. 685.
Remedy. — The writ of habeas corpus is the proper remedy for the ascertainment and enforcement of the legal or proper custody of an infant. Green v. Campbell, 35 W. Va. 698, 14 S. E. Rep. 212. See mono-graphic note on “Habeas Corpus.”
Father’s Right of Action for Loss of Child’s Services. —The father has the right to the custody of his infant child, with the correlative duty of maintenance, from which there results a right to the child’s services; hence, the father is entitled to maintain an action for loss of its services against any one who wrongfully interrupts the rendering of them, or makes the full rendering of them during minority impossible. The loss of service is the gist of the action. Taylor v. C. & O. R. Co., 41 W. Va. 704, 24 S. E. Rep. 631; State v. Reuff, 29 W. Va. 751, 2 S. E. Rep. 801.
Employment of "llnor without Parent’s Consent,— Where one knowingly engages a minor in a dangerous employment, without the father’s consent, express or implied, and the minor is injured in such employment, he is responsible to the father for the consequent loss of the minor’s services. This is certainly true when it is against the known will of the father, as in the principal case. Taylor v. C. & O. R. Co., 41 W. Va. 704, 24 S. E. Rep. 631.
Imputation of Negligence. — In Norfolk, etc., R. Co. v. Ormsby, 27 Gratt. 455, it was held that the negligence of parents and guardians was not to be imputed to infant children and wards, disapproving of the doctrine laid down in Hartfield v. Roper, 21 Wend. 615; Norfolk, etc., R. Co. v. Groseclose, 88 Va. 267, 13 S. E. Rep. 454; Dicken v. Salt Co., 41 W. Va. 511, 23 S. E. Rep. 582; Trumbo v. Street-Car Co., 89 Va. 780, 17 S. E. Rep. 124; Roanoke v. Shull, 97 Va. 419, 37 S. E. Rep. 34.
Lewis, P., said obiter in Norfolk, etc., R. Co. v. Groseclose, 88 Va. 267, 13 S. E. Rep. 454, that if the suit were by the parent for the loss of service caused by the injury to the child, the contributory negligence of the plaintiff would be a good defence, but it is not to be considered where the suit is by the child or his personal representative. Gunn v. Ohio, etc., R. Co., 42 W. Va. 676, 26 S. E. Rep. 546.
Release of Claim to Child’s Services.
Emancipation of Child. — Though the father is entitled to the custody of his child’s person and to his services during infancy, yet it is competent for the father, notwithstanding he is indebted and insolvent at the time, to release to his son all claim to the latter’s services; where the father consents to the son’s becoming a partner, this is a relinquishment of all claim to the services of the son, during the existence of the partnership, in the business in which the *55 son is actively engaged. Penn v. Whitehead, 17 Gratt. 503; Trapnell v. Conklyn, 37 W. Va. 242, 16 S. E. Rep. 570; Jackson v. Jackson, 96 Va. 165, 31 S. E. Rep. 78.
Child’s Right to Sue for His Wages. — Where the father of a minor does not claim and never has claimed his wages, the minor himsélf máy recover his wages after he comes of age, where he establishes his fight to them in other respects. Jackson v. Jackson, 96 Va. 165, 31 S. E. Rep. 78.
B. PERSONAL SERVICES. — "In all cases where compensation is claimed for services rendered near relatives, as a father, brother, grandfather, etc., the law will not imply a promise, and no recovery can be had unless an express contract, or what is equivalent thereto, is shown. It is not enough to establish a moral obligation to pay for them, but an actual promise must be proved, or facts from which such promise can be reasonably inferred, established by evidence so clear, direct and explicit, ás to leave no doubt as to the understanding and intention of the parties. Loose declarations to neighbors or friends, or even to the claimant himself, are not enough, particularly when such relative is deceased. It must be shown that the deceased intended to, and did assume a legal obligation to the complainant for such services, of such a character that it could be legally enforced against him. Expressions of commendation or gratitude, or of an intention to remember him in his will, cannot, unless brought home to the knowledge of the claimant, and shown to have been the consideration upon which the services were rendered, to the knowledge of the deceased, be made the basis of a. contract obligation. An action cannot be predicated upon intentions merely.” Jackson v. Jackson, 96 Va. 165, 31 S. E. Rep. 78: Harshberger v. Alger, 31 Gratt. 52; Stansbury v. Stansbury, 20 W. Va. 31; Broderick v. Broderick, 28 W. Va. 378; Riley v. Riley, 38 W. Va. 283, 18 S. E. Rep. 572; Beale v. Hall, 97 Va. 383, 34 S. E. Rep. 53.
Uncle and Nephew. — Where a minor lives with his uncle as a member of his family, the uncle furnishing him with food, raiment, and shelter, and the minor rendering to his uncle his services, without any contract or mutual understanding as to compensation for support or wages to be paid, such minor cannot recover from his uncle, nor from his personal representative, the value of the services thus rendered, though the value of such services may have been greater than the value of such support. Riley v. Riley, 38 W. Va. 283, 18 S. E. Rep. 569.
Father-in-Law and Son-in-Law. — No compensation will be allowed a son-in-law for nursing his father-in-law, in the absence of a contract express or implied, since, considering the relation between the parties, the services are such that no compensation ought to be expected. Williams v. Stonestreet, 3 Rand. 559.
Conversely, No Action by Father against Son. — On the other hand, no action can'be maintained by a father against a son for his board and that of his horse, in the absence of any express contract or engagement to pay for them; hence, an express contract by the son founded on such antecedent services is void for want of consideration. In this case, a deed of trust.by the son, to secure the father was held fraudulent as to creditors of the son. Stoneburner v. Motley, 95 Va. 784, 30 S. E. Rep. 364.
Presumption Ceases after Emancipation of Children. —When children leave their father, marry, and set up in life for themselves, the presumption that he gives them their support, ceases. When they come back to the parental roof to live, with adequate means for their support, unless he chooses to give them board, they are under the same obligation to pay their way as anybody else, and, under such circumstances; the law presumes a promise from a benefit accepted. Bell v. Moon, 79 Va. 354.
Or Where Father and Son Deal with Each Other as Strangers. — Where the plaintiff avers that he is the natural son of the testator, but there is no proof that the testator, during his lifetime, by any act or word ever acknowledged that any such relationship existed, and there is no evidence to show that they ever dealt with each other, or treated each other in their business relations, otherwise than as strangers; and it appears from the hill and is not denied in the answer, that the plaintiff at the request of the testator lived with his family on the testator’s farm and worked for him, that on leaving him, he sued the testator for his labor and recovered, which suit was settled by the testator executing to him his obligation for $400, that afterwards, when testator had become very old and feeble and unable to work his farm, the plaintiff a-t the testator’s request, sold some land he had purchased, and moved on the testator’s farm- again, and with his own means and labor put it into a saleable condition: held, that the plaintiff was entitled to recover for his property and labor expended on testator’s farm. Broderick v. Broderick, 28 W. Va. 378.
Expectation of Compensation induced by Representations of Other Party Sufficient. — Where a minor, residing with a near relative, other than her parents, is led to believe, by the kindness, conduct, and conversations, in jest or earnest, of such relative, that she is to receive compensation for her future services rendered in promotion of his business, in some form, and, in expectation of such compensation, she faithfully performs such services, and he afterwards discharges her without compensating her in the manner in which he led her to believe he would do, and denies all liability to her, she is entitled to recover the actual value of such services, in an action of assumpsit, even though such relative testifies that such promises were made in jest, and he had no expectation or intention of recompensing her for her services, but was only acting towards her in loco parentis. Plate v. Durst, 42 W. Va. 63, 24 S. E. Rep. 580.
Express Contract for Compensation. — If a father promise to pay a son for caring for and supporting him it creates a valid demand in favor of the son. Harris v. Orr, 46 W. Va. 261, 33 S. E. Rep. 257.
Services Performed in Expectation of a Legacy.— Where there is ah express agreement between a father and a son that the father will devise the home place to the son, or in some testamentary way compensate him for his services, if the son will attend to and take care of him for life, and' the son performs his part of the agreement, he is entitled to recover upon a Quantum meruit for his services if the father’s part‘of the contract is unperformed, It is a valid contract, though not in writing, not forbidden by the statute of frauds, and not barred by the statute of limitations, until the prescribed period has fun since the death of the promisor before the bringing of the suit. Cann v. Cann, 40 W. Va. 138, 20 S. E. Rep. 916; Jones v. Jincey, 9 Gratt. 720.
Evidence Showing Absence of Express Contract.— Where the evidence shows that 'the grandfather promised his grandson, that if he would stay over with Mm,' he Would pay him, and the plaintiff stays, *56 this negatives any presumption that there was any antecedent contract for compensation. Jackson v. Jackson, 96 Va. 165, 31 S. E. Rep. 78.
Will Admissible Evidence to Show Rendition of Services. — A will of the testator is admissible evidence to show that the services had been actually rendered, where the will gives a certain sum for services rendered by the plaintiff. Stansbury v. Stansbury, 20 W. Va. 23.
Statute of Limitations. — Even if a daughter has a valid claim for services rendered her mother, as it accrued in the lifetime of her mother, and the statute began to run then, the claim will be barred by the statute when she does not bring action till six years after her mother’s death, and though her claim were an equitable claim against her mother’s equitable separate estate, the claim will be barred in the same time as at law. Harshberger v. Alger, 31 Gratt. 52.
insufficient Acknowledgment of the Claim. — The following words in a will are not a sufficient acknowledgment of the debt to take it out of the statute of limitations: “I give to Abraham $8,800.00 in the value of the land, $3,000.00 for his services rendered.” The acknowledgment is coupled with a qualification which shows that the debt was satisfied at the same time that the promise was made. The land is given in satisfaction of the claim, if the satisfaction is renounced, the acknowledgment is likewise. Stansbury v. Stansbury, 20 W. Va. 23.
G. TRANSACTIONS BETWEEN PARENT AND CHILD.
Contracts between Parent and Child. — Contracts between parent and child are regarded in equity with a jealous eye, hence in all cases, where the bona Mes of the transaction is brought in question, it is requisite that the proof be clear, cogent and convincing. Saunders v. Greever, 85 Va. 252, 7 S. E. Rep. 391.
So where a son claims the personal property of his father under a parol purchase; though the property is listed for taxation in the son’s name, this only raises a prima facie presumption of ownership in the son, which may be overcome by other evidence, especially when it appears that it was so listed merely to avoid an execution levy for a surety debt. Saunders v. Greever, 85 Va. 252, 7 S. E. Rep. 391.
Gifts between Parent and Child. — A court of equity will furnish its aid in making effective a gift of land, by a father to his child when the gift is evidenced by an unsealed instrument, executed by the father and formally delivered to the child. Marling v. Marling, 9 W. Va. 79. See monographic note on “Gifts.”
Undue Influence. — A reconveyance from a daughter to her father obtained from the daughter by working upon her affection for her father, who was old and feeble and of whom she was very fond, and obtained when she was in a strange place and without giving her the opportunity for deliberation or counsel, will be set aside on the ground of undue influence. Davis v. Strange, 86 Va. 793, 11 S. E. Rep. 406.
When Conveyance Presumed to Be in Satisfaction of a Debt. — Where a father, being indebted to his children, afterwards conveys property to them, which is more than equal to the amount of the debt, this conveyance will be presumed to be in satisfaction of the debt, if there are no circumstances to prove a contrary intention. And although the property conveyed, and the debt, are not ejusdem generis, the oné may be a satisfaction of the other, if the intention of the testator be apparent that such should be the effect. Kelly v. Kelly, 6 Rand. 176.
Payment by Father of Child’s Debts. — If a father make payments in part of a gaming debt of his son, and never reclaim them in his lifetime, but provide by his will a fund for payment of the balance, they should not, after his death, be claimed of his son’s estate, but considered as payments, or advancements, to the latter; as payments, to the amount of any previous existing accoun ts of the son against the father; and beyond that amount, as advancements to the son. Carter v. Cutting, 5 Munf. 223.
Undutiful Litigation Discountenanced. — A court of equity will not countenance the unjust litigation of an undutiful son against his mother, though she is his legal guardian. Myers v. Myers (W. Va.), 35 S. E. Rep. 868.
Naturalization of Parent. — Under § 2172, Rev. U. S. Statute (1873), the children of persons naturalized under any law of the United States, being under the age of twenty-one, shall, if dwelling in the United States, be considered citizens thereof; but the second clause of that section, providing that “the children of parents, who now are or have been citizens of the United States shall, though born out of the limits and jurisdiction of the United States, be considered as citizens thereof,” does not apply to children who are over twenty-one when their father was naturalized, even though the father was naturalized before these statutes went into effect. In any event, the word "now” refers to the 3’ear 1802, when the statute was originally enacted, hence would not apply to the child of whatever age of a father naturalized in 1866. Dryden v. Swinburne, 20 W. Va. 89.
II. BASTARDY.
A. DEFINITION. — A bastard in Virginia is “one born out of wedlock, lawful or unlawful, or not within a competent time after the coverture is determined; or, if born out of wedlock, where parents do not afterwards intermarry, and the father acknowledge the child; or who is born in wedlock when procreation by the husband is for any cause impossible.” 1 Min. Inst. (4th Ed.) 438; Smith v. Perry, 80 Va. 567.
B. PRESUMPTION OF LEGITIMACY. — The presumption of the law is in favor of the legitimacy of the child where recognized by the husband, unless procreation by the husband was impossible for any cause, from his being beyond the seas, and the like. Smith v. Perry, 80 Va. 563; Scott v. Hillenberg, 85 Va. 245, 7 S. E. Rep. 377.
“With respect to procreations during marriage, the presumption is, that all persons born during marriage are legitimate. This presumption can be destroyed only by contrary proof, demonstrating that the child is not the child of the husband; which, again, can only be done by showing that, from his continued absence from his wife, at or about the time of procreation, or from the impotency of his body, it is impossible that he should be the father. This presumption, in favor of legitimacy, is so strong, and the exceptions thereto are held under such strictness, that, where a man was divorced from his wife, propter perpetuam generandi impotentiam, and then married another woman, who had issue during the marriage, that issue was holden to be his, on the ground that a man may be habilis et inhdbilis diversis temporibus. It is not, therefore, a mere circumstance of probability that will operate in this case to bastardize the issue. Such issue will *57 be held to be legitimate, unless it be conclusively shown, that a person, other than the husband, must necessarily and unavoidably have been the father. This doctrine applies, a fortiori, it is believed, to cases of procreation before the marriage.” Roane. J., in Bowles v. Bingham, 3 Munf. 601.
Evidence to Repel Presumption Must Be Clear and Positive. — The presumption of legitimacy is not rebutted by proof of circumstances, which only create doubt and suspicion. To repel the presumption of legitimacy in any case, the evidence must be clear and positive. Scott v. Hillenberg, 85 Va. 245, 7 S. E. Rep. 377.
What Evidence Insufficient. — Where the parents of the supposed bastard lived together as husband and wife and reared the child as their own, and the pretended father only sets up his claim, after the child's death, in order to succeed to his property, though respectable witnesses assert their belief that he is the father, on the ground that the mother did have an older child by the pretended father, who was acknowledged to be his child, nevertheless, this was held insufficient and the presumption of legitimacy prevailed. Smith v. Perry, 80 Va. 563.
Nonaccess of Husband Must Be Proved beyond Reasonable Doubt — Nonaccess of the husband to the wife must be proved beyond all reasonable doubt; so where the preponderance of evidence is in favor of the legitimacy of the issue, the question will be decided in favor of legitimacy. Scott v. Hillenberg, 85 Va. 245, 7 S. E. Rep. 377.
Husband’s Declarations. — A husband's declarations that a child horn in wedlock is not his, are not sufficient evidence to prove it illegitimate; notwithstanding it was born only three months after the marriage, and a separation, between his wife and himself, soon after took place by mutual consent. Bowles v. Bingham, 2 Munf. 442.
Mulatto Child of White Parents. — Where husband and wife are both white persons and a child is born of the wife during their wedlock and cohabitation; upon the trial of an issue, whether this child is the legitimate child of the husband, evidence that the child is a mulatto, and that, in the course of nature a white man and a white woman cannot procreate a mulatto, is admissible and proper, Tucker, P., saying: “It is not this or that particular impossibility that bastardizes the child. The essence of the rule is, that if it be impossible that the husband can be the father, the child is a bastard. The cases of the husband being beyond sea, imprisoned, impotent, and the like, are but instances of the application of the rule. Even nonaccess, if proved, though the parties are in the same kingdom, will suffice. How, then, if the impossibility rests upon the laws of nature itself? Shall it be less regarded? Shall the white child of á white couple be bastardized, upon questionable proof that the husband was rendered impotent by disease; and shall we legitimate a negro because he was born in wedlock? The learned judges give no countenance to such opinions.” Watkins & Wife v. Carlton, 10 Leigh 575.
O. CONSTRUCTION OF ACT LEGITIMATING THE ISSUE OF VOID MARRIAGES, LEGITIMATES THE ISSUE OF A SECOND MARRIAGE, THOUGH FIRST HUSBAND TS STILL ALIVE.— Under the statute which declares that “The issue of marriages deemed null in law shall nevertheless be legitimated,” Code Va., § 2554, the issue of a woman by a second marriage, which took place during the lifetime of her first husband, are legitimate. Stones v. Keeling, 5 Call 143. approved in Heckert v. Hile, 90 Va. 390, 18 S. E. Rep. 841, where the issue of a .second marriage born before the dissolution of the first marriage, were held legitimate, and the case of Greenhow v. James, 80 Va. 636, was held not to be in conflict with this decision nor that of Stones v. Keeling, supra.
Legitimation by Subsequent Marriage and Recognfc tion.
Act of 1785 Retroactive. — A child born out of wedlock in the year of 1776 was legitimated by the subsequent intermarriage of his parents and acknowledgment by his father in 1778. under the act of 1785, taking effect 1st Jan. 1787, providing that: “Where a man, having by a woman one or more children, shall afterwards intermarry with such woman, such child or children, if recognized by him, shall be thereby legitimated.” Sleigh v. Strider, 5 Call 439.
Such Issue Are Entitled to Share in the Distribution of Their Father’s Estate. — An illegitimate child, born before the first of January, 1787, of parents who intermarried also before that period (the father, who died in 1799, having recognized the child by his will as his own, though born before wedlock), is entitled to an equal distribution of the father’s unbequeathed estate, with his other children born after the marriage, being legitimated by the act of 1785. Rice v. Efford, 3 H. & M. 225.
Such Issue Deemed “Issue of the Marriage.” — Issue bom before the intermarriage of their parents, are to be deemed “issue of the marriage,” where the parents afterwards intermarry, so as to prevent them from being mere volunteers under a marriage settlement. Coutts v. Greenhow, 2 Munf. 363.
But this decision was discredited, or at least held not to apply where such subsequent intermarriage was illegal, or where the parties, being a white person and a negro went out of the state to be married, though the marriage was valid where celebrated. Greenhow v. James, 80 Va. 636.
Effect of Recognition before Marriage, or after Death of the Person Born Out of Wedlock. — Where a bastard marries and dies, leaving a legitimate child: and then the parents of the bastard marry and the father of the bastard, before the father's marriage, and in the lifetime of the bastard, recognizes her as his child; and so recognizes her after his marriage. which is after the bastard’s death, it was held that the child of the bastard may inherit through his mother, from her father. Ash v. Way, 2 Gratt. 203. See present statute, Code Va. 1887, § 2553, which provides that recognition maybe before or after marriage.
Statute Does Not Apply to a Subsequent Void Marriage. — The provision of the Code of Va. 1887, §2553, that “If a man haying had a child or children by a woman, shall afterwards intermarry with her, such child, etc., if recognized by him before or after marriage, shall be deemed legitimate,” does not apply to a marriage made absolutely void by the terms of the statute, e. g., a marriage between a white person and a negro. Lewis, P., and Richardson, J., dissenting. Greenhow v. James, 80 Va. 636.
Construction of Act Legalizing the Harriage of Negroes. — The Act of Assembly of February 27, 1866, “To legalize the marriageof colored persons then cohabiting as husband and wife” applies to the issue of such marriages, whether born before or after the passage of said act, and whether there had been any formal marriage ceremony or not. Smith v. Perry, 80 Va. 563. “This law, in effect, antedates the marriage, and makes it valid from the time the *58 relation began, and their children are legitimate whether recognized or not, if the cohabitation continued until the day of the passage of the law, and it was not in the power of the father to bastardize the children begotten by him, if he was still cohabiting with the mother. Where the connection and cohabitation has ceased before the passage of the law, the legitimacy of the child depends upon the recognition of the father.” Lacy, J., in Smith v. Perry, 80 Va. 563.
To Be Construed Liberally. — Such a law, being remedial, must be construed so as to advance the remedy and extend the relief. Smith v. Perry, 80 Va. 567.
The Question of Bastardy, Settled in Other Respects, as in Case of Valid Harriage. — Where in a case under that law it is charged that the supposed bastard was begotten by one not the husband, the question of bastardy must be settled as that question would be, when bastardy is charged against a person born during coverture or recognized during coverture,' though born before. Smith v. Perry, 80 Va. 563.
D. CAPACITY OP BASTARDS TO INHERIT AND TRANSMIT INHERITANCE.
May Transmit Inheritance on the Part of Their Mother. — Under the statute of Virginia directing the course of descents, 1 Rev. Code, ch. 96, Code 1887, § 2552, bastards are capable of transmitting inheritance on the part of their mother; and where a bastard dies intestate, leaving no children or descendants, but leaving his mother surviving, and two bastard brothers, by other fathers, the estate will pass to the mother and the two bastard brothers; but the two bastard brothers, being regarded as of the half blood only, will each inherit only half so much as the mother. Garland v. Harrison, 8 Leigh 368; Hepburn v. Dundas, 13 Gratt. 219; Thomason v. Andersons, 4 Leigh 118.
Parker, J., in Garland v. Harrison, 8 Leigh 368, said; “I have no doubt that it was intended by the 1 Rev. Code, ch. 96. § 18, Code 1887, § 2552, to bestow upon illegitimate children the same capacities of inheriting from and through their mother, and passing inheritance to and through her, as they possess under the 19th section, Code 1887, § 2553, relating to subsequent legitimation, in respect to both parents; that is to say, to make them in all respects the legitimate children of their mother.”
Take with Legitimate Children as “Children” of Their flother. — Upon a devise to a daughter for life, and at her death the property to be equally divided among her children, an illegitimate child of the daughter will take with her legitimate children; Bennett v. Toler, 15 Gratt. 588. See Thomason v. Andersons, 4 Leigh 118.
E. BASTARDY PROCEEDINGS AGAINST PUTATIVE FATHER.
Residence of Woman, — The law does not require that the woman, who makes the complaint, should have resided a year in the county before the birth of the child, but, “for the preceding year,” i. e., for a year preceding her complaint. Tennant v. Brookover, 12 W. Va. 337.
flay Make Complaint before Any Justice of Her County. — It is not necessary for the warrant to show in what district or township the woman resided, nor that she resided in the same district or township in which the justice, before whom she made the complaint, resided.' If she had resided for a year in the county, she might go before any justice in any township thereof and make the accusation. Neither was it necessary for the warrant to be returned before the justice of the township or district, in which the accused is found. The law requires the justice, if it be a proper case, to issue a warrant directed to the sheriff of, or constable in, any county where the accused may be, requiring him to be apprehended and taken before a justice of any township of the county, in which he may be found. Tennant v. Brookover, 12 W. Va. 337.
Charge Must Be in Writing. — But if it appears that the charge before the magistrate by the mother of the bastard child was not taken down in writing, according to the provisions of the act, the judgment must be reversed and the complaint dismissed. Howard v. Overseers, 1 Rand. 464; Mann v. Com., 6 Munf. 452.
One or flore of the Overseers of the Poor Must Be Parties to the Proceedings. — A person accused of being the father of a bastard child, cannot lawfully be bound to support such child, unless it appear that the Warrant was issued by the magistrate upon the application of the overseers of the poor, or one of them, or that they, or one of them, were parties to the cause in the court making the order against such person. Mann v. Commonwealth, 6 Munf. 452.
It Must Appear That Child Has Been or Is Likely to Be Chargeable to the Parish. — Under the 18th section of the act of 1792, “providing for the poor,” etc., a person is not to be bound to support a bastard child, unless it appear that such child' has either actually been, or is likely to be, chargeable to the parish. And where the bastard child has never been placed on the parish list, but has been supported without any engagement of the overseer of the poor respecting it, the court is not authorized to enter a retrospective judgment, compelling its alleged father to pay for its previous maintenance. Fall v. Overseers of Augusta County, 3 Munf. 495.
But It Is Immaterial Whether Anything Has Been Actually Paid for the Support of the Child or Not.— Where the county court makes an order against the putative father of a bastard child, that he shall pay to the overseer of the poor twenty dollars a year for seven years, though the overseers of the poor may never have paid anything for the support of the child, they are entitled to recover these annual sums from the putative father. Willard v. Overseers of Poor of Wood County, 9 Gratt. 139.
Proceedings Hay Be Instituted by a Married Woman. —An order of the county court that the putative father of a bastard child, whose mother was a married woman, who had been deserted by her husband should pay to the overseers of the poor a certain sum annually for six years, commencing from the birth of the child, was held proper, though the statute applies in terms only to single women. 2 Rev. Code 1819, p. 272; Code 1873, p. 923, § 1; Lyle v. Overseers, 8 Gratt. 20.
After Judgment Rendered and Bond Given, the Defendant Cannot Be Rearrested. — In a proceeding in bastardy against the putative father, after the defendant has been arrested, the case tried before a jury, and verdict rendered, and judgment rendered upon the verdict, and the'defendant has given bond, approved by the court, to insure compliance with the order of the court as to the payment of money for the maintenance of the child, the cause is ended, and the law does not authorize the rearrest of the defendant to compel him to comply with the judgment of the court,-or to 'give a new bond to secure such compliance. Barbour County Court v. O’Neal, 42 W. Va. 295, 26 S. E. Rep. 182.
*59 Accrued Installments Payable When Judgment Rendered. — It is not error for the court to render a judgment ordering the defendant to pay a certain amount tor the maintenance of a bastard child at the end of every year, and requiring the defendant to give bond for the performance of the order, though one of the installments became due six months before the judgment was rendered; for though he cannot go back and pay the first installment, yet he can pay it when he executes the bond. Tennant v. Brookover, 12 W. Va. 337.
Mother has Power to Compromise the Proceedings.— Under the statutory provisions of this state, a bastardy proceeding can only be instituted by the mother of the child; and unless the county court assumes the prosecution thereof, and orders the suit to proceed in its name, she -has the right to compromise and dismiss the same. Failure regularly to continue such suit from term to term, or require a renewal of his recognizance, operates as a discharge of the accused, and such proceeding can only be renewed by the mother in the manner provided by law. Billingsley v. Clelland, 41 W. Va. 231. 23 S. E. Rep. 812.
Note Given in Compromise Valid. — A note given to a woman in compromise of a bastardy proceeding is binding and valid, and on sufficient consideration, and the payment thereof cannot be avoided on the ground that the compromise of such proceeding is contrary to public policy, or against public morals. Nor can the innocence of the putative father be set up as a defence against the recovery of such note, in the absence of fraud on the part of the obligee in procurement thereof. Billingsley v. Clelland, 41 W. Va. 234, 23 S. E. Rep. 812.
Jurisdiction of Courts in West Virginia.
Act of Dec. 9, 1873, Not Applicable to Causes Then Pending in Circuit Courts.- The Act of Dec. 9, 1873, “To amend and re-enact chapter 80 of the Code,” touching the maintenance of bastards, was not retrospective and did not take away from the circuit courts their jurisdiction to try warrants of bastardy, which had issued and under which recognizances had been taken, requiring defendants to appear in said courts, before the passage of said act, but the proceeding should conform as far as possible to that act. Tennant v. Brookover, 12 W. Va. 337.
Evidence.
Complainant’s Chastity Not in issue. — in a prosecution for bastardy against the putative father of a bastard child, under the provisions of chapter 80 of the Code, the character of the complainant for chastity is not involved in the issue. Swisher v. Malone, 31 W. Va. 442, 7 S. E. Rep. 439.
Admissibility of Evidence of Previous Sexual Intercourse of Complainant — Must Be Capable of Affecting Paternity of Child. — Upon the trial in such a proceeding the defendant will not be permitted to introduce evidence to prove that the complainant has at any time had carnal connection with other men, unless such connection has occurred within such a period before the commencement of her gestation that it is possible that one of such other persons may have been the father of the child. Swisher v. Malone, 31 W. Va. 442, 7 S. E. Rep. 439.
Inadmissible Where Defendant Admits Having Had Intercourse with Complainant.-If a single woman, j having been delivered of a bastard child, on her ( oath, charge a certain man with being its father, ( and aver that there is no possibility of her being mistaken, it is competent for the person accused to invalidate her testimony by proving that, about nine months before its birth, she was guilty of criminal intercourse with other men. But if the defendant admit that he, also, had criminal intercourse with her about the same time, such proof should be rejected, and he may be confined to proof of the general character of the mother. Fall v. Overseers of Augusta County, 3 Munf. 495.
Inadmissible Merely to Impeach Complainant’s Testimony — if upon such trial the complainant upon the witness stand, in her examination in chief or upon cross-examination, has testified that she has never had connection with any man other than the defendant, he cannot, for the purpose of impeaching her testimony, or of showing that he is not the father of the child, introduce testimony tending to show that she has had such carnal connection with other men, unless it has occurred so near the commencement of her gestation that some person other than the defendant may be the father of the child. Swisher v. Malone, 31 W. Va. 442, 7 S. E. Rep. 439.
Costs — To Whom Given. — The defendant cannot assign it as error that the court gave the costs to the overseers of the poor for the use of the plaintiff instead of to the plaintiff herself since it does not concern him. Tennant v. Brookover, 12 W. Va. 337.
Appellate Jurisdiction.The superior courts of law have jurisdiction to grant writs of supersedeas to orders of the county or corporation courts, binding persons accused of being the fathers of bastard children, to support such children. Mann v. Commonwealth, 6 Munf. 452.
When Appellate Court Should Itself Render Judgment. — In a bastardy proceeding, the county court having decided in favor of the putative father, and the overseers of the poor having spread the facts upon the record by an exception, and taken an appeal to the circuit court, that court, upon reversing the judgment of the county court, should not send the cause back for a new trial, but should render a judgment in favor of the overseers of the poor for the amount appearing to be due, but without interest. Willard v. Overseers of the Poor of Wood County. 9 Gratt. 139.
Irregular to Admit New Evidence in Appellate Court.
—On an appeal from an order of a county court, providing for the support of a bastard child, it is irregular for the appellate court to receive new evidence of the fact, which was not before the county court, but the judgment of the lower court will not be reversed for this error alone. Howard v. Overseers,
1 Rand. 464.
Bastardy Proceedings Now Abolished in Virginia,— “This provision for the maintenance of bastard children being applicable only to white women, an apprehension arose that it was in conflict with the provision of the Civil Rights Act of 1866 (Rev. Stats. U. S. p. 348, §§ 1977 et seq.), or to amendment XIV. of the United States Constitution, and under the influence of that groundless apprehension, the whole doctrine tonching the charging of putative fathers with the maintenance of bastards has been repealed. (Acts 1874-5, p. 94, ch. 112.) The apprehension is deemed to be groundless, because the proceeding is not for the benefit of the mother, who is not legally bound to support the child, but for the relief of the county.” 1 Min. Inst. (4th Ed.) ch. 9, p. 148.