**Richmond.**

COFFEE AND WIFE V. BLACK.

NOVEMBER 18th, 1866.

1. PARENT AND CHILD—*Infant—Custody—Habeas corpus.*—When a person entitled, but not having custody of infant, is claiming to recover it, the court will exercise its discretion according to the facts, consulting infant's wishes, if of years of discretion ; and if not, exercising its own judgment as to what will be best calculated to promote the infant's welfare, having due regard to the legal rights of the claimant. *Armstrong* v. *Stone,* 9 Gratt. 107.
2. IDEM—*Transfer.*—A parent may transfer to another the custody of his child, and the court will not pronounce *that* custody an illegal restraint, which is held under fair agreement, and is not injurious to the child.
3. IDEM—*Case at bar.*—A case where at death of its mother, the father transferred his daughter, then three years old, to her mother's sister, who reared her properly and made her happy, and was desirous and able to continue so to do, and the child was loath to leave her aunt. After several years, the father, by writ of *habeas corpus,* sought to recover custody. It appeared that the change was calculated not to promote the child's welfare. On appeal—

HELD :

> Under the circumstances, the situation of the child should not be changed, and the writ should be denied.

Error to judgment of circuit court of city of Lynchburg, rendered 14th May, 1885, upon proceedings by writ of *habeas corpus* sued out by Daniel A. Black against W. W. Coffee and Sarah E. Coffee, his wife, whereby it was decided that "Mary E. Black is illegally detained in the custody of the said defendants," and it was ordered that "they do deliver up to the

plaintiff his infant child, the said Mary E. Black." From this judgment Coffee and wife obtained a writ of error and *supersedeas* from one of the judges of this court. Opinion states the case.

*A. H. Burroughs,* for the plaintiffs in error.

*W. W. Larkin,* for the defendant in error.

Lacy, J., delivered the opinion of the court.

In December, 1882, D. A. Black and his wife, the wife being then ill of a disease of which she died January 15, 1883, delivered over their infant child Mary to the appellants, as is claimed by them, to be by them adopted and cared for as their own, they being childless, and Mrs. Coffee being the sister of Mrs. Black, where the child has remained ever since.

This infant, who is the subject of this controversy, was, at the time of the transfer, three years old, and is now about seven years old. The child has been well and tenderly cared for by her aunt and her husband, and is contented and happy. Black has four other small children, and his sister-in-law lives with him, and the intercourse between the familes has remained pleasant and affectionate in character, until upon a recent misunderstanding, growing out of a trivial circumstance, the father became angered and demanded the return of his little girl. His other children have been in the habit of visiting their little sister, and on one occasion, arriving when their aunt was absent and the little girl gone to bed, they were not admitted by a person in charge. Upon demand for the child, the aunt first remonstrated, and then refused to deliver up the child; whereupon the father applied for the writ of *habeas corpus,* to obtain the custody of the child; and, upon the hear-

ing, the child was ordered to the custody of the father by the circuit court; from which order this appeal is taken.

The father is entitled to the custody of his child, when he is a fit and suitable person, and when he has not voluntarily relinquished it. But in cases where the father has voluntarily relinquished the custody of an infant, to a female, or other relatives, or suitable persons, and the child has grown and expanded within the new life around her, and become aliened, or has grown up a stranger to the paternal home, upon application to the court to interpose to break up formed ties of affection and domestic love, the question is no longer to be viewed in the light of the father's legal rights, they having been abandoned by him, but in the light of a cautious regard for the happiness and welfare of the infant. As has been said in such case, "the welfare of the infant, and not the rights of the parent, is the polar star by which the discretion of the court is guided in awarding the custody of the infant." Tyler on Infancy, 283. Another writer states it thus: "As a general rule, the writ of *habeas corpus*, and all action upon it, are governed by the judicial discretion of the court, in directing which, all the circumstances are to be considered. In the case of a child of tender years, the good of the child is to be regarded as the prominent consideration." Hurd on *Habeas Corpus*, 482. This court said, in the case of *Armstrong* v. *Stone*, 9 Gratt. 102, "when the person entitled, has not the custody, and is seeking to be restored to it, the court will exercise its discretion according to the facts, consulting the wishes of the minor if of years of discretion, if not, exercising its own judgment as to what will be best calculated to promote the interests of the child, having due regard to the legal rights of the party claiming the custody." Opinion of Allen, J., p. 107. "The law in this country, at least, prescribes no age at which the child shall be presumed to have discretion adequate for this purpose. The

court prefers to exercise its own judgment in each case upon the competency of the child. It looks to the capacity, information, intelligence and judgment of the child.

It removes, as far as possible, all improper influences by which parties interested in its custody may seek to bias its choice, and if it finds the child able to reason sensibly, though as a child, in regard to its condition and its preferences and prospects, it will take its wishes into consideration." Hurd on Hab. Cor. 532.

Lord Denman, Ch. J., said, in the case of *Rex* v. *Greenhill,* 4 Ad. & El. 624: "When an infant is brought before the court by *habeas corpus,* if he be of an age to express a choice, the court leaves him to elect where he will go. If he be not of that age, and a want of discretion will only expose him to dangers or seductions, the court must make an order for placing him in proper custody."

A parent may emancipate his minor child, or may forfeit his right by improper conduct. Why, then, may he not transfer to another this right of custody, which he may thus abandon or forfeit, *especially* when the interests of the child are not prejudiced by the assignment; and how can the court pronounce *that custody, which is held by fair agreement with the parent and not injurious to the child, an illegal restraint?* We think that no consideration should be allowed weight which relates to the rights of the father to the services of his child under such circumstances. The main consideration should be as to the best interest of the child. This child was transferred at a very early age by the bed-side of her dying mother. We would pass by, in regard for the feelings of those concerned, the painful revelations of the testimony, but when a father is refused the custody of his child, it should not be for light or trivial considerations, and his demand must stand or fall upon its merits, as it stands related to the welfare of the child. That

the child was given to the appellants by the father, is clear; it appears that the mother is dead; that the place of the mother has been supplied by a female, the sister-in-law of the father; she is not his wife. The evidence shows that the father is a man of ruined fortune, of dissipated habits, who only works occasionally, is much from home, and his home is ruled by his sister-in-law. He has four little children in his house whom he did not give to friends; these he he has endeavored to put out at ten dollars a week for their board and clothes, and he was not able to make the arrangements because the party says she was afraid she would not get the money, and could not afford to board them for nothing. These children are perhaps objects of affection to him, and yet they do not appear to be under his protection. It appears that these little children are cruelly and brutally beaten in his house, and when kind friends and relations called his attention to the "*bruises and stripes on the backs of his children,*" he has promised that it should not be so again. But if we take it for granted that he would protect them, then we must conclude that he cannot, that there is an unnatural force in his house, too powerful for any restraint from him; for another witness says that little Tommie, the youngest, was whipped in a brutal manner, having whelks and gashes in his back, and he said his aunt, Mrs. Black, the sister-in-law, had whipped him. Little Tommie is a sickly child. It is painful, indeed, to raise the veil from this sickening picture. But when it is urged that little Mary would pass under this heartless rule, with nothing to save her from the passions of this stranger to her in blood and in fact, but the father, who cannot protect the others, the worst must be feared if she should be given to her father.

There is nothing in the record to show brutality on the part of the father towards his children; but he is said to be irregular in habits, dissipated, and to take but little thought of his children.

In considering only the advantages of the change to this child, it seems that all has been for the better for this little motherless girl. From a sad home, where other children must share what seems but a scanty board, from which the father is obliged to be much away, and where she, at least, has formed no ties, she has been transferred when too young to feel the pain of separation, to a home of comfort and plenty and affection, where she has won for herself, as the long years of infancy have rolled by, strong ties of love to strengthen the ties of nature; she is with her mother's sister, who, childless without her, is to her a mother. If we can believe the evidence, the change is one of terror to her. She is happy now, and all her surroundings are suitable and safe, and all is assured. The proposed change is, at best, but an experiment, which seems in no way to promise a better life, or in any wise to be to the welfare of the child.

In such a case, the situation of the child cannot properly be changed, She should be left where her father placed her, and where she is happy and contented.

The order of the circuit court should be reversed and annulled, and the petition of the father dismissed and the writ denied.

JUDGMENT REVERSED.