## CHARLESTON.

GREEN *v.* CAMPBELL.

Submitted September 9, 1891.—Decided December 7, 1891.

1. PARENT AND CHILD—HABEAS CORPUS.

The writ of *habeas corpus* is the proper remedy for the ascertainment and enforcement of the legal or proper custody of an infant, and is of an equitable nature, applied to this class of cases.

2. PARENT AND CHILD.

Where the father has not the custody of the child, but is seeking to be restored to such custody, the court will exercise its discretion according to the facts, consulting the wishes of the infant, if of years of discretion, having, however, due regard to the legal rights of the party claiming the custody.

3. PARENT AND CHILD.

The father is the natural guardian of his infant children, and in the absence of good and sufficient cause shown, is entitled to their custody.

4. PARENT AND CHILD.

But the court is in no case bound to deliver the child into the custody of any claimant, but may leave it in such custody as the welfare of the child at the time appears to require.

5. PARENT AND CHILD.

Such order as to the custody of the child is not an unalterable, final judgment, but will last until the child may have the right to nominate its own guardian, or until a material change of circumstances require a change of custody.

6. PARENT AND CHILD.

When a parent has transferred to another the custody of his infant child by fair agreement which has been acted on by such other person, to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless he can show that a change of custody will materially promote his child's welfare, moral or physical.

*J. W. Harris* for plaintiff in error, cited 2 Laws. R. & R. § 816 *et seq.*; 5 Waite Ac. & Def. 41-43; 76 Ga. 479; 14 R. I. 62; 9 W. Va. 600, 614; 43 Am. Rep. 768.

*J. Osborne* for defendant in error, cited 16 Pick. 203; 5 Binn. 520; 6 How. 406; 2 Sto. 981; 8 Johns. 328; Hurd Hab. Corp. 528; 82 Va. 570; Id. 433.

HOLT, JUDGE:

This was a writ of *habeas corpus* sued out of the Circuit Court of Monroe county on the 18th day of August, 1890, on petition of Robert Green, the father, against James A. Campbell, the grandfather, to compel the latter to give up to the father the custody of Green's infant son, Thomas Campbell Green, then three and a half years old, as unlawfully detained by the grandfather. The Circuit Court, having heard the evidence of witnesses and the argument of counsel, was of opinion that the infant was not unlaw-

fully detained by the grandfather, but, on the contrary, that he was entitled to the custody and control of the infant; and from this decision Green, the father, has brought the case here by appeal.

The facts are as follows: Robert Green, the plaintiff, married the daughter of James A. Campbell, the defendant. Thomas Campbell Green, the infant, the right to whose custody is the matter here in dispute, is now three and a half years old. His mother died when he was sixteen months old, when he was committed by his father to the care and custody of his grandmother and grandfather, the defendant, who have raised, supported, and had the sole care and custody of the child from that day to this. Campbell, the grandfather, and his wife are sober and industrious, of high moral character, Campbell owning considerable property, including a farm on which he lives, in the county of Monroe, and is well able to take care of the child according to its condition in life. Both these grandparents are devoted to the child, and the child devoted to them, and they have no living children of their own except a son over twenty one years of age, a young man well raised and of high moral character. Thus far the grandparents have provided everything for the comfort and well-being of the child, as they are well able to do. Robert Green, the father, is thirty two years old, sober, industrious, of high character, good family, and capable of providing for and raising his child according to its station in life, is warmly attached to it, and it to him. At the death of his first wife he was living in the same house with his father-in-law, and cultivating a part of Campbell's farm as his tenant. He married a second wife in May, 1890, about twenty two years of age, who has no children as yet, and who desires to have this child with her and to care for it, it being her husband's only child. He owns a farm about three miles from Campbell's, on which he now lives with his second wife, of what kind or of what value we are not informed. Thus far there is no controversy about the facts.

The grandparents of the child claim and testify that, upon the death of the mother, Green's first wife and their daugh-

ter, Green relinquished the child to their care and custody, with the express understanding and upon the express condition that it was not after awhile to be taken away from them; that Green assented, with the understanding that he was to see his child and take him around with him sometimes, to which Campbell and wife agreed, saying that if anything should happen to them, so that they would not be able to take care of the child, they should expect Green then to take the child and care for it; that Green assented, and upon these terms and conditions they took the child, and have thus far kept and cared for it, as already stated. Campbell and wife are borne out in their statement by another witness. In fact, Green does not deny what was said and done, but claims that what he meant was that they were to keep the child, but only until such time as he might be in a position to have it properly cared for himself; being then unmarried and without a family.

Mrs. Campbell, the grandmother, during this conversation about keeping the child, told Mr. Green that "she had seen some old people have trouble enough in taking children to raise, and then having to give them up, and that she did not intend to be treated in that way." Green does not deny this, and it is a very strong circumstance tending to confirm their understanding of what took place.

"The father of the minor, if living, and, in the case of his death, the mother, if fit for the trust, shall be entitled to the custody of the person of the minor, and to the care of his education." See section 7, chapter 82, Code (Ed. 1891.) But "the right of the father or mother to the custody of their minor child is not an absolute right to be accorded to them under all circumstances, for it may be denied to either of them, if it appears to the court that the parent, otherwise entitled to this right, is unfit for the trust." *State* v. *Reuff*, 29 W. Va. 751 (2 S. E. Rep. 801.) The father is the natural guardian of his infant children, and in the absence of good and sufficient cause, such as ill usage, grossly immoral principles or habits, want of ability, *etc.*, is entitled to their custody, care and education. *Rust* v. *Vanvacter*, 9 W. Va. 600; *State* v. *Reuff*, 29 W. Va. 751 (2 S. E. Rep. 801.)

Where the father has not the custody of the child, and is seeking to recover it, the court will exercise its discretion according to the facts, consulting the wishes of the minor, if of years of discretion; if not, exercising its own judgment as to what will be best calculated to promote the interests of the child, having due regard to the legal rights of the party claiming the custody. *Armstrong* v. *Stone,* 9 Gratt. 102, 107.

The courts of equity of this State, in granting divorces, may decree as it shall deem expedient concerning the care, custody, and maintenance of the minor children,   *   *   * and may revise or alter such decree, as the circumstances of the parents and the benefit of the children may require— see section 11, chapter 64, Code (Ed. 1891) p. 614, showing the discretion given the court in that class of cases—but that such discretion is to be guided by considering what will be of benefit to the children rather than by any legal right of the parent; and such is the manifest tendency of the modern doctrine on the subject.

This writ, with so memorable a history, and now so highly prized among English-speaking people everywhere, designed and admirably adapted to secure individual freedom, without which a vital part of the great charter itself might have been but a solemn asseveration of abstract right, has come to be applied to other uses, and, among them, to the ascertainment and enforcement of the right of custody of infant children. *Mathews* v. *Wade,* 2 W. Va. 464. But it is not to be forgotten or overlooked that such use of this writ is of an equitable nature, and therefore the welfare of the infant is the polar star by which the court is to be guided in the exercise of its discretion; and the court, when asked to restore, is not bound by any mere legal right of parent or guardian, but is to give it due weight as a claim founded on human nature, and generally equitable and just. *Armstrong* v. *Stone,* 9 Gratt. 102–107; Church, Hab. Corp. §§ 440–442.

"The court is in no case bound to deliver the child into the custody of any claimant or of any other person, but may leave it in such custody as the welfare of the child at the time appears to require." Hurd, Hab. Corp. (2d Ed.)

461. The court does not establish a permanent custody, but one intended to continue until a change of circumstances shall, in respect of the infant's welfare, require a change of custody, or until the infant has reached the age of fourteen years, when, by statute, he may nominate his own guardian, subject to the parent's right and to confirmation by the court. Section 4, c. 82, Code, p. 673.

Looking at the question before the Court in this light, and applying these principles, there are some reasons why the father should not have asked for what he is here seeking, and still more why the court should not grant it. These I shall endeavor to give briefly in the language of the facts of the case, for there really can be no serious controversy about the only material disputed point, which is not the turning point in my view in any event.

How could Robert Green, the plaintiff, have misunderstood the meaning and intent of the mother of his dead wife, when she told him in advance, and as a condition of her taking this infant, then sixteen months old, to raise it, she did so with the express understanding that it was not to be given up to him, only in the unexpected and improbable contingency named by her, and was not to be taken from her and her husband after they had had the trouble of raising it, when, as the child of their old age, they had become more attached to it than to any child of their own. Plaintiff handed her the child, and she took it. To say that this was not his agreement because he did not in so many words assent to it is a little like a man denying his bond, because when he delivered it he kept silent and said nothing. On this branch of the case, see *Coffee* v. *Black*, 82 Va. 567; *Merritt* v. *Swimley*, Id. 433; *Clark* v. *Bayer*, 32 Ohio St. 299 (30 Amer. Rep. 593); *Chapsky* v. *Wood*, 26 Kan. 650 (40 Amer. Rep. 321) and editor's note, citing and commenting on the following cases, among others: *Verser* v. *Ford*, 37 Ark. 27; *Lyons* v. *Blenkin*, Jac. 245; *U. S.* v. *Green*, 3 Mason, 482; *Wilcox* v. *Wilcox*, 14 N. Y. 575; *Matter of Waldron*, 13 Johns. 417; *Pool* v. *Gott*, 14 Law Rep. 269; *Durmain* v. *Greynne*, 10 Allen, 270; *State* v. *Libbey*, 44 N. H. 321, qualifying *State* v. *Richardson*, 40 N. H. 272. See, also, *In re Scarritt*, 76 Mo. 565 (43 Amer. Rep. 768 and

notes); *Brooke* v. *Logan,* 112 Ind. 183 (13 N. E. Rep. 669 2 Amer. St. Rep. 177, and notes). In this last case Mr. Freeman sums up what he deems the weight of American authority on this point, as follows : "A father can, by agreement, surrender the custody of his infant child to another, so as to make the custody of that other legal." To the same effect, see Hurd, Hab. Corp. 528 ; Tyler, Inf. p. 283.

(1) The father during his lifetime, and after his death the mother, is entitled to the custody of the person of their infant child, because, by the law of nature, it is theirs to care for and bring up, and this right is recognized and enforced by our statute.

(2) But such right is not absolute, for the welfare of the infant may require the court, in the exercise of its sound discretion, to leave or intrust the custody to another.

(3) The feelings and rights of one whom the father has put in the place of parent, and between whom and the child such relation has created mutual affection, are not to be subject to the whim and caprice of the father; but, unless it appears that the best interests of the child imperiously demand it, the court, in dealing with relations so delicate, so easily set ajar irreparably, will follow the discreet course of letting well enough alone.

(4) And, to enable them to do this, the writ applied to this class of cases is of an equitable nature, and we should turn our back at once upon this qualified estoppel, if the infant's moral or physical welfare clearly pointed another way.

In this case it does not, but, on the contrary, plainly leads us in a direction which does not involve any breach of faith on the part of the father. This little boy, now nearly five years old, is himself, no doubt, attached to his grandmother—he has known no other mother; to his grandfather; to his grown-up uncle; to the quiet, sober old homestead with its abounding comforts and plenty. Human nature and human experience are parts of the common law; there is no need that this child should speak. Can the plaintiff take him to a better home—to one as good, for his present moral training and his physical comfort, pres-

ent and to come, for some years, at least? What fact appears in this record that should induce us to drag him away to the home of a stranger, of a young married woman, good and amiable, in every way worthy of high esteem, but none the less a stranger, the mistress of a strange home, and likely, in the course of nature, soon to have about her those dearer to her than her own self? Plaintiff does not say that this new home of his is a better one for this child. He does not pretend to tell us why, or show us how, it is a better home than the present one, or that he is more able, or as able, to supply him in his tender years with what he needs as he is now supplied with and sure to receive, for some years, at least. All he pretends to say, and that is a great deal, and very much to his credit as a man, is that he is extremely fond of his child. But this great fondness has in this instance blinded his better judgment, as, in all likelihood, he would to his sorrow have learned, when too late to restore his child to that comfortable and appropriate home which he, by fair agreement, provided for him on the death of his first wife; and he will himself hereafter see, as others now foresee, that it is discreet, and not at variance with true, as contrasted with capricious, fondness, to leave his little boy where we find him. Therefore the judgment of the learned judge, who saw these parties face to face, and heard them testify, should be and is affirmed.

AFFIRMED.